EDMISON *et al. v.* SIOUX FALLS WATER CO.

1. In assessing damages caused by an injunction, under Comp. Laws, § 4988, contemplating a summary proceeding for such assessment, without trial by a jury, and without formal pleadings required in ordinary actions, no damages must be included that do not necessarily result from the granting of the injunction order.

2. The liability of sureties on an injunction bond will not be extended by construction beyond the terms of the instrument.

3. In assessment of damages on an injunction bond in a suit wherein respondent was enjoined from cutting off appellants water supply, no damages can be recovered for water supplied to appellants while such injunction was in force, when the order did not preclude respondent from suing to recover the water rates as fast as they became due; appellants being solvent during that time and for several years thereafter.

4. The fact that judgment had been obtained against the principals on an injunction bond, for water supplied them, while the injunction preventing respondent cutting off the supply was in force, and execution issued and returned unsatisfied, will not give respondent a right to assess damages for the value of the water on the bond, where the action to recover the rates was not instituted until some time after the injunction was dissolved, when it might have been brought each quarter when the rates became due, and a delay of several years in assessing the damages occurred, during which time the principals became insolvent.

5. Courts, in estimating damages caused by injunctions, proceed upon equitable grounds; and losses sustained by delays and laches on the part of the defendant should be borne by him.

(Opinion filed Jan. 22, 1898.)

Appeal from circuit court, Minnehaha county. Hon. J. W. JONES, Judge.

Action to enjoin defendant company from cutting off plaintiff's water supply. A preliminary injunction was granted plaintiff but on trial judgment was rendered for defendant. A reference was ordered to assess damages sustained by reason of the issuance of the preliminary injunction. From the judgment entered upon the referee's report, plaintiffs and sureties appeal. Modified and affirmed.

The facts are stated in the opinion.

*W. A. Wilkes* and *Aikens, Bailey & Voorhees*, for appellants.

In assessing damages upon the dissolution of an injunction, none will be allowed that are not the actual, natural and proximate result of the issuing of the injunction. Sutherland on Damages, § 526; High on Injunctions, § 964; 10 Am. & Eng. Encyc. Law, 996; Collins v. St. Clair, 51 Ills. 328; Morgan v. Nelgey, 53 Pa. St. 155; Sensening v. Parry, 113 Id. 115; Wood v. State, 66 Md. 61; Foster v. Bank, 68 Vt. 658; Chicago &c. Co. v. Howison, 86 Ill., 215; Hotchkiss v. Platt, 8 Hun, 46.

*Davis, Lyon & Gates* and *D. R. Bailey*, for respondent.

The damages which the enjoined party may be entitled to are such losses and injuries as he sustained by the operation of the injunction. These damages are measured by the principle of giving just and adequate compensation for actual losses. Collins v. Sinclair, 51 Ill., 328; High on Inj., §§ 1673, 1683; Richardson v. Allen, 74 Ga. 719; Roberts v. White, 73 N. Y. 379; Jordon v. Volkening, 72 N. Y. 300; 1 Spelling Extr. Rel. § 949.

CORSON, P. J. In September, 1891, the plaintiffs, Edmison and Jameson, being then the owners of a six story building

in Sioux Falls, instituted an action against the defendant to enjoin it from cutting of the water supply for their said building, which it was alleged the water company was threatening to do. A preliminary injunction order was granted, upon condition that plaintiffs execute an undertaking in the penal sum of $2,000, with sureties. Such an undertaking was executed by the plaintiffs, with Brace and Corson as sureties. In September, 1892, a trial was had, resulting in a judgment for the defendant. In May, 1896, the defendant procured an order of reference to assess the damages sustained by the defendant by reason of the issuance of the preliminary injunction. The matter was referred to a referee, and his report was confirmed by the court, and from this order or judgment the plaintiffs and their sureties have appealed to this court.

The referee, in assessing the damages, included all the water rates chargeable against the plaintiffs, Edmison and Jameson, during the time the preliminary injunction order was in force, and for $155, attorney's fees. No objection was taken to so much of the referee's report as included attorney's fees, and no appeal is taken from that part of the order. The plaintiffs and sureties contend that the court erred in including water rates, amounting to $1,845, that accrued while the injunction order was in force. The material part of the injunction order is as follows: "It is ordered that the defendant desist and refrain from in any manner cutting off, discontinuing, or interrupting the supply of water furnished from the water mains of the defendant to plaintiffs for use in the building known as the 'Edmison & Jameson Block,' * * * until the court shall make further order in the premises." The condition of the undertaking is as follows: "Now, therefore, we * * * undertake, pursuant to the statute, that the said plaintiffs will pay to the said Sioux Falls Water Company such damages, not exceeding two thousand dollars, as it may sustain by reason of the injunction, if the court shall finally decide that the plaintiffs are not entitled thereto; and the damages may be

ascertained by a referee or otherwise, as the court may direct."
It will be observed that in neither the injunction order nor un-
dertaking is the collection of water rates referred to.

It is contended by counsel for appellants that, while the
defendant was restrained from cutting off the water from the
Edmison and Jameson building, the defendant was not in any
manner restrained from collecting its water rates by ordinary
proceedings in the courts, and hence these water rates were
not properly included as part of the damages sustained by the
defendant.   The contention of the defendant is that its ordinary
remedy for a failure to pay the water rates was its right to cut
off the water supply, and, when it was restrained from cutting
off the supply of water, it was, in effect, deprived of its right
to enforce its remedy for the collection of its water rates
against the plaintiffs, as provided by rule 24 of the water com-
pany, which reads as follows:   "For a violation of any of the
company's rules or for the nonpayment of rent, the water com-
pany reserves the right to turn off the water without notice,
and any payment made shall be forfeited.   After the water has
been turned off from any service pipe, the same shall not be
turned on until back rents are paid, together with the expense
of turning off and on such water, which expense shall in no
case be less than one dollar."   The assessment of damages was
made under the provisions of Sec. 4988, Comp. Laws, the con-
cluding part of which is as follows:   "The damages may be as-
certained by a reference, or otherwise, as the court shall
direct."   The statute seems to contemplate a summary pro-
ceeding for the assessment of damages, without a trial by jury,
and without formal pleadings required in ordinary actions.   In
such case the statute must be strictly construed, and no dam-
ages included that do not necessarily result from the granting
of the injunction order; and the liability of the sureties will
not be extended by construction beyond the terms of the instru-
ment.   High, Inj. § 1635.

So far as the record discloses, Edmison and Jameson were
perfectly solvent during the pendency of the injunction action,

and up to July 1896. Nothing in the injunction order precluded the defendant from proceeding in an ordinary action to recover the amount of such water rates. Mr. High, in his work on Injunctions, thus states the rule applicable to the assessment of damages: ''In estimating damages sustained by the improper issuing of an injunction, the courts proceed upon equitable grounds; and, while it is difficult to fix any precise rule or standard for determining the damages upon dissolution, it may be said generally that nothing will be allowed which is not the actual, natural, and proximate result of the wrong committed; and, where no damages have been actually incurred, none should be assessed. In other words, the liability upon the injunction bond is limited to such damages as arise from the suspension or invasion of vested legal rights by the injunction. Speculative and remote damages are not properly allowable, nor are those which are merely consequential, the limit being such damages as flow directly from the injunction as its immediate consequence. * * * And the only damages which can be recovered are such as arise from the operation of the injunction itself, and not such as are occasioned by the suit independent of the injunction." High, Inj. § 1663. Applying the rules therein laid down, it is difficult to perceive wherein the failure to collect the water rates pending the injunction suit was the result of such injunction order.

Edmison and Jameson were, as we have seen, solvent, and the courts were open to the defendant at all times in which to proceed for any amount that might be due it for water furnished. The fact that the remedy which the rules of the defendant gave it was suspended does not seem to afford sufficient ground for holding the sureties liable for these water rates. The failure to collect them as before stated, was not the result of the injunction order, nor was that order the proximate cause. The water company seems to have allowed these water rates to remain uncollected of its own volition. Mr. Sutherland, in his work on Damages says: These damages, however,

are ascertained and measured by the principle of giving just and adequate compensatiom for actutal loss, which is the natural and proximate result of the injunction. If the restraint keeps the owner of property out of possession or deprives him of its use, the compensation is given upon the same principle as in other cases of wrongful deprivation. Where a party was prevented from enjoying the benefit of his real estate by injunction, which was obtained without cause, the value of the use and occupation was given as damages, but an injunction interfering with the collection of rents due does not change the legal relation of landlord and tenant, so as to entitle the former to recover for use and occupation; but the true basis of the recovery is the losses from the insolvency of the tenants during the pendancy of the injunction. In a case where a landlord was restrained from interfering with the possession of real estate occupied by tenants, it was held that the inquiry of damages should be, what rent has the defendant lost by reason of the injunction? If the tenants were and are still responsible, then their covenant can be enforced, and the rent recovered; and there would be no actual loss. If, however, they have become irresponsible, or have abandoned the premises pending the injunction, or the premises, or any part of them, were unoccupied, and might have been rented, there may be a claim for a loss of rent. In short, the loss must be ascertained in view of the responsibility of the parties and their several remedies, and also in view of the condition of the premises and the landlord's ability to have rented or collected rent while the injunction continued, which he is unable now to collect, by reason of the irresponsibility of the tenants, or by reason of the premises being unoccupied. For such items the defendant should recover, as the legitimate damages sustained by reason of the injunction." 2 Suth. Dam. pp. 69, 70; McDonald v. James, 47 How. Prac. 474. In the latter case the court says: "Among them the injunction had suspended the collection of rent, but it neither canceled the leases nor de-

feated or annulled the tenants' covenant to pay rent; and therefore, upon the suspension being removed, the landlord could have proceeded to enforce the covenant, and she can still do so. Even if she had procured and executed a warrant of removal, her remedy for rent to the time of such removal remained."

In the case at bar, the water company for more than three years, could have collected its water rates by the ordinary proceedings in the courts; and, immediately after the injunction action was determined, it could have enforced the rule, and cut off the water from the plaintiff's building, and refused to turn it on until the back water rates were paid. It would therefore seem to be most inequitable and unjust to hold the sureties responsible for the ultimate loss of the defendant, caused entirely by its own fault and laches. It is true, the record discloses the fact that in March. 1893, the water company commenced an action to recover the water rates due, but which was not determined until June, 1896, when a judgment against Edmison and Jameson was entered for about $4,000. Upon this judgment an execution was issued and returned unsatisfied, and, about the same time, this proceeding against the said Edmison and Jameson and sureties was had. We are of the opinion that the fact that this action was instituted in the spring of 1893 does not change the aspect of this case, for two reasons: (1) At the expiration of each quarter, during the pendency of the injunction order, an action could have been instituted for the water rates; and the failure of the water company to institute such suits and the subsequent loss of these water rates, cannot be imputed to the plaintiffs or sureties in the injunction action. They had done nothing to prevent actions to recover these rates quarterly. (2) The delay in bringing these actions and the delay in causing these damages to be assessed, if the water company could now prevail, would work irreparable injury to the sureties. As we have before said, the proceedings for assessing damages provided by the statute are intended to be summary, speedy, and contemplate prompt proceedings after

the disposition of the injunction suit for the assessment of d mages. The legislature could never have intended that the defendant might lie by for years, and then call upon the sureties, after the principals had become insolvent, to make good the damages. As will be noticed from the quotation from Mr. High's work on Injunctions, courts in estimating the damages, proceed upon equitable grounds; and losses sustained by delays and laches on the part of the defendant should be borne by such defendant. The court of appeals of Missouri holds that a motion to assess the damages must be made at the terms at which the injunction suit was terminated. Loehner v. Hill, 19 Mo. App. 141. And the rule there laid down seems to be approved by the supreme court of Missouri in Hoffelmann v. Franke, 96 Mo. 533, 10 S. W. 45. While it may not be necessary to decide that question in this case, these decisions show clearly the view the courts of that state take of the summary remedy provided by the statute for assessing damages; and where, as in this case, there has been a delay of over three years, and the principals have become insolvent, no court of equity should exercise its powers to direct the damages to be assessed, assuming it had jurisdiction over the judgment for that purpose. It is quite clear from the record before us that, had a motion been made and the damages assessed upon the determination of the injunction suit, the sureties, if called upon to pay the damages, could have protected themselves against loss. But we prefer to place our decision upon the ground that the water rates were not properly included as damages assessed by the referee. The judgment or order of the court below, so far as appealed from, is reversed, and all amounts stricken therefrom except the sum of $155 and costs; and, as so modified, the judgment is affirmed. The costs of this appeal will be entered against the water company.

Rehearing denied, March 16, 1898.